IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MICHAEL BOYCE, | ) |
| --- | --- |
| Plaintiff, | ) Civil Action No. 3:15-cv-157 |
| v. | ) United States District Judge |
| DEPARTMENT OF CORRECTIONS, TREVOR WINGARD, ALLEN JOSEPH, JOSEPH JOZEFCZYK, DEBRA RHOADS, and CHRIS ROSAGE, | ) Kim R. Gibson |
| | ) United States Magistrate Judge |
| Defendants. | ) Cynthia Reed Eddy |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

This is a civil rights action under 42 U.S.C. § 1983 initiated, *pro se*, by Plaintiff, Michael Boyce, a Pennsylvania state inmate.[1] At the time the Complaint was filed, Plaintiff was serving a sentence at the State Correctional Institution-Somerset ("SCI-Somerset") for a series of convictions − none of which was a sex offense. Nevertheless, while at SCI-Somerset, he was recommended for enrollment in the Pennsylvania Sex Offender Program ("SOP"). Plaintiff claims that his designation as a sex offender eventually led to him being denied parole and violated his Eighth and Fourteenth Amendments rights.

---

[1]     At the time Plaintiff filed his complaint, he was in the custody of the Pennsylvania Department of Corrections at SCI-Somerset. In January, 2016, Plaintiff notified the Court that he had been paroled. However, in August of 2016, at the time Defendants filed their motion for summary judgment, Plaintiff was confined in the Cambria County Jail as a technical parole violator. On September 22, 2016, Plaintiff notified the Court that he had been returned to the custody of Pennsylvania Department of Corrections and was again housed at SCI-Somerset. The Pennsylvania inmate locator reflects that Plaintiff remains in custody at SCI-Somerset. Online at http://inmatelocator.cor.pa.gov (last visited December 12, 2016).

Now pending before the Court is a Motion for Summary Judgment filed by Defendants, the Pennsylvania Department of Corrections ("DOC"), Trevor Wingard, Allen Joseph, Joseph Jozefczyk, Debra Rhoads, and Chris Rosage, along with a brief and concise statement of material facts ("CSMF"). (ECF Nos. 54-56). Plaintiff filed a response in opposition, along with a responsive CSMF. (ECF Nos. 60-61). The motion is ripe for disposition. For the following reasons, it is respectfully recommended that the motion be granted in part and denied in part.

## II. REPORT

### A. Factual and Procedural Background[2]

On May 14, 2012, Plaintiff was sentenced to an aggregate sentence of three (3) to seven (7) years following his convictions for corruption of minors, receiving stolen property, and disorderly conduct. He was up for parole on May 24, 2015. Defendants had given him "institutional support" for parole in late 2014. On January 12, 2015, Parole Officer Rosage conducted a pre-parole interview. In preparation for the interview, Rosage reviewed Plaintiff's criminal record, including the criminal complaint and affidavit of probable cause related to Plaintiff's disorderly conduct conviction. Rosage had not previously seen the affidavit of probable cause since it was not contained in the original case summary information he received from the DOC. Based on his review, it appeared to Rosage that this offense was sexual in nature. In particular, the affidavit of probable cause stated that "[Plaintiff], age 50, stated to three female juveniles 'you want to take your panties off and show them to me.'" (Defs.' CSMF at ¶ 16, ECF No. 56). Believing that he had to share any information that might assist the DOC in providing

---

[2] The following facts, which have been drawn from the parties' concise statements and the attached exhibits, are not in dispute, unless otherwise noted.

2

appropriate programs for an inmate, Rosage forwarded the criminal complaint and affidavit to Joseph Jozefczyk, a psychologist at SCI-Somerset, and asked whether Jozefczyk believed Plaintiff warranted consideration for the SOP.[3] He also sent copies to Plaintiff's counselor, Debra Rhoads; his unit manager, Brad Westley; and his supervisor, Paul Straka.

Jozefczyk agreed that the offense appeared to be sexual in nature and that an SOP evaluation was warranted. Rhoads scheduled Plaintiff for the evaluation, which Jozefczyk conducted on January 22, 2015. In evaluating Plaintiff, Jozefczyk used DOC's standard sex offender evaluation tool, which involved reviewing Plaintiff's offenses of conviction, Static 99 testing, interviewing Plaintiff, and reviewing Plaintiff's entire criminal history, personal information, and background. Based on his evaluation, Jozefczyk recommended Plaintiff for low intensity treatment.

Plaintiff refused to participate in the program. According to Defendants, as a result of Plaintiff's refusal to participate, "[h]is DC43 Prescriptive Program Plan would simply indicate

---

[3] As the Third Circuit Court of Appeals has explained, "Pennsylvania's SOTP is entitled '*Responsible Living: A Sex Offender Treatment Program*' and consists of a seven-phase behavioral modification course." Renchenski v. Williams, 622 F.3d 315, 321 (3d Cir. 2010). "Section 11(B) of the DOC's Policy Statement on Access to Mental Health Care ('Policy 13.8.1') governs 'risk/need assessment' and outlines how the DOC evaluates sex offenders." Id. "After the initial assessment, the treatment provider recommends a final risk level based on, among other things, the risk of recidivism, the attitude the inmate displays regarding sexual crimes, and any indication that the offender has a primary sexual attraction to children." Id. There are two categories of offenders: "low risk" and "moderate/high risk." See Policy 13.8.1, § 11(B)(4)(h), available at http://www.cor.state.pa.us. "Moderate/high risk" offenders have to "receive all seven phases of *Responsible Living: A Sex Offender Treatment Program*[,]" while "low risk" offenders are only required to undergo three phases. Id. In addition, for "moderate/high risk" offenders, the program consists of one weekly two-hour group therapy session over the span of two years. Id. at § 11(C)(1)(2)(f). For "low risk" offenders, "[t]he total target time to complete the program . . . is approximately eight months; however, this also shall be a function of the group's rate of progress through the program material." Id. If an inmate fails to "self-refer (via written or verbal request) to treatment within a period of one year," his counselor is required to advise him "regarding the possible consequences of failure to participate in treatment." Id. at § 11(B)(4)(G).

3

that he had been recommended for SOP and refused, but . . . this information is not available to any inmates or most staff (only staff involved in treatment)." (Defs.' CSMF ¶ 52, ECF No. 56).

On January 22, 2015, Plaintiff filed a grievance against Jozefczyk, in which he claimed that he was erroneously "forced" into the SOP even though he had never been charged with or convicted of a sex offense. His grievance was initially denied by Program Manager Allen Joseph and then denied at the second level of review by Superintendent Trevor Wingard.

Plaintiff underwent his parole interview on January 28, 2015, and the Parole Board denied his request for parole one month later. The reasons offered were:

> Your need to participate in and complete additional institutional programs.
>
> Your risk and needs assessment indicating your level of risk to the community.
>
> Reports, evaluations, and assessments/level of risk indicates your risk to the community.
>
> Your refusal to accept responsibility for the offense(s) committed.

(Defs.' Ex. 7, ECF No. 57-1).

Sometime thereafter, Plaintiff appealed his grievance to final review, adding the allegation that his parole had been denied because of his recommendation for sex offender treatment. His appeal was brought before the Joint Resolution Committee, which consists of staff from both the DOC and the Parole Board. The committee recommended that SOP be removed from Plaintiff's correctional plan. It was, in fact, removed on May 12, 2015.

Plaintiff was granted parole following a second review in late October 2015. On January 4, 2016, he was released from SCI-Somerset to Harrisburg Community Corrections Center. On April 8, 2016, he was discharged from that facility. Subsequently, he was taken into custody on several parole violations, for which he is currently incarcerated Cambria County Jail.

Plaintiff initiated this action, *pro se*, by filing a complaint on June 11, 2015, naming as Defendants the DOC, Wingard, Joseph, Jozefczyk, Rhoads, and Rosage, and alleging violations of the Eighth and Fourteenth Amendments. In his complaint, Plaintiff requests monetary damages for "mental anguish and emotional distress," as well as "review for parole without the sex offenders [sic] program recommendation." (Compl. at 4, ECF No. 3). Defendants filed an answer on December 23, 2015. Following discovery, Defendants filed this motion, in which they seek summary judgment as to each of Plaintiff's claims.

**B.  Standard of Review**

Summary judgment is appropriately entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. See Montone v. City of Jersey City, et al., 709 F.3d 181 (3d Cir. 2013). Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-movant. Watson v. Abington Twp., 478 F. 3d 144, 147 (3d Cir. 2007).

**C.  Discussion**

    1.  Mootness

Although not raised by the parties, the Court must begin by addressing whether this case, or any aspect of the relief requested by Plaintiff, has become moot. See Donovan ex rel.

Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003) (explaining that the issue of mootness must be addressed *sua sponte* because it affects the court's Article III jurisdiction). "If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-699 (3d Cir. 1996).

Since the sex offender recommendation was removed from Plaintiff's correctional plan and he was paroled after filing this suit in Federal Court, his request for a new parole hearing without the sex offender designation is moot. See Williams v. Sec'y Penn. Dep't of Corr., 447 F. App'x 399, 403 (3d Cir. 2011). In addition to seeking injunctive relief, Plaintiff requests monetary damages "for mental anguish and emotional distress." However, § 803(d)(e) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), "prohibits compensatory damages for mental or emotional injury absent allegations of physical injury[,]" of which there are none here.[4] Doe v. Delie, 257 F.3d 309, 335 n.3 (3d Cir. 2001) (citing Allah v. Al–Hafeez, 226 F.3d 247, 251 (3d Cir. 2000)). Still, nominal damages of $1 may be recovered. Id. While Plaintiff does not expressly request nominal damages in his complaint, the Court of Appeals "has held that 'it is not necessary to allege nominal damages'" where, as here, "the allegations in [the] complaint are consistent with a claim for nominal damages." Allah, 226 F.3d at 251 (quoting Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965)).

---

[4] As one court has explained, "there is no indication that continued confinement alone fulfills" § 1997e(e)'s physical injury requirement. *Wilson v. Phoenix House*, No. 10 CIV. 7364 DLC, 2011 WL 3273179, at *3 (S.D.N.Y. Aug. 1, 2011). And, in any event, even if Plaintiff's continued confinement after the denial of his parole did satisfy this requirement, Plaintiff would be barred from recovering such damages under Heck v. Humphrey, as explained in greater detail below.

6

The question then becomes whether a request for nominal damages – and *only* nominal damages – is enough to save a case from mootness. The Third Circuit Court of Appeals has not directly addressed this issue. See Freedom from Religion Found., Inc. v. Connellsville Area Sch. Dist., 127 F. Supp. 3d 283, 300 (W.D. Pa. 2015); Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 486 (3d Cir. 2016) (Smith, C.J., concurring). It has, however, "held that a claim for nominal damages in conjunction with one for punitive damages is enough to avoid mootness." Id. (citing Delie, 257 F.3d at 314 n.3). While an open question in this Circuit, the consensus in other Circuits is that a claim for nominal damages, by itself, is enough to prevent a case from becoming moot. See, e.g., Morgan v. Plano Independent Sch. Dist., 589 F.3d 740, 748 (5th Cir. 2009); Lynch v. Leis, 382 F.3d 642, 646 n.2 (6th Cir. 2004); Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1257 (10th Cir. 2004); Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001). At least one member of this Court has adopted this approach, while noting that it "has not gone without criticism." Freedom from Religion Found., Inc., 127 F. Supp. 3d at 300 (citing Utah Animal Rights Coal., 371 F.3d at 1263 (McConnell, J., concurring).

The Chief Judge of our Court of Appeals recently joined in the criticism. See Freedom from Religion Found. Inc., 832 F.3d at 487-89 (Smith, C.J., concurring). In Chief Judge Smith's view, "[m]ost circuits that have held that nominal damages can prevent mootness reach the result with . . . little analysis of how a claim for nominal damages would redress a cognizable injury in fact." Id. at 487. As he further explained, "'nominal damages were originally sought as a means of obtaining declaratory relief before passage of declaratory judgment statutes.'" Id. (quoting Utah Animal Rights Coal., 371 F.3d at 1265 (McConnell, J., concurring). Declaratory relief is necessarily forward-looking. So, too, is an award of nominal damages; the "sole objective is to

prevent the alleged constitutional violation from continuing." Id. at 489. Thus, Chief Judge Smith argued, it should follow that once claims for injunctive and declaratory relief become moot, so too should a claim for nominal damages. Id. "[T]o hold otherwise[,]" he contended, "would allow litigants to avoid mootness of claims for injunctive relief by simply 'appending a claim for nominal damages' to the complaint." Id. (quoting Utah Animal Rights Coal., 371 F.3d at 1266 (McConnell, J., concurring)).

To be sure, it does seem "'odd that a complaint for nominal damages could satisfy Article III's case or controversy requirements, when a functionally identical claim for declaratory relief will not.'" Freedom from Religion Found., Inc., 127 F. Supp. 3d at 300 (quoting Utah Animal Rights Coal., 371 F.3d at 1257 (majority opinion)). "But," as Judge McVerry has observed, "that is the law in the majority, if not all, of the circuits and our own Court of Appeals has suggested that it agrees with it." Id.; see also Doe, 257 F.3d at 323 n.3 (Garth, J., dissenting in part and concurring in part) (explaining "that the claim for nominal damages prevents our dismissing [the plaintiff's] action as moot"). Thus, Chief Judge Smith's concerns notwithstanding, the prospect that Plaintiff may recover nominal damages prevents this action from becoming moot.

    2.    Heck v. Humphrey

Defendants' first contention is that Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), insofar as he is seeking damages for the decision to deny him parole in February 2015. "It is well-settled that when a state prisoner is challenging the fact or duration of his confinement, his sole federal remedy is a writ of *habeas corpus*, not a § 1983 action[,]" no matter what type of relief he is seeking. Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006). "In Heck, the Supreme Court held that where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must

first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence." Id. "Few things implicate the validity of continued confinement more directly than the allegedly improper denial of parole." Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir. 1997). Thus, if Plaintiff were challenging the Parole Board's failure to grant his release, his claim would be barred by Heck. See Williams, 453 F.3d at 177; Cibula v. Fox, 2013 WL 3871637, at *5 (M.D. Pa. July 25, 2013), aff'd, 570 F. App'x 129 (3d Cir. 2014).

However, in his response to Defendants' motion for summary judgment, Plaintiff has clarified that his "claim revolves around being erroneously categorized as a sex offender without procedural due process . . . ." (Pl.'s Resp. in Opp. at 2, ECF No. 60). Indeed, he did not initially request to have the initial parole decision overturned; he just sought a new review without the sex offender recommendation. Success on this claim would not necessarily demonstrate the invalidity of the duration of Plaintiff's confinement. In other words, if Plaintiff is able to prove that he was denied due process, it would not necessarily mean that the Parole Board's decision was wrong. It still could have denied him parole even without the sex offender designation. Therefore, Heck does not apply. See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005) (explaining "that § 1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner"); *Farmer v. McVey*, 349 F. App'x 671, 674 (3d Cir. 2009) (concluding that "challenges to parole hearing procedures, as opposed to their results, might be actionable under § 1983 if such challenges neither contest the fact of confinement nor seek speedier release"); Cibula, 2013 WL 3871637, at *5 (explaining "that [p]laintiff's claims based on his being classified as a sex offender, allegedly without due process, were not barred by Heck" because success on the merits would not necessarily entitle the plaintiff to immediate release).

3. Fourteenth Amendment Claim

On the merits, Defendants argue that Plaintiff's due process claim fails because he has not established that he was deprived of a liberty interest protected by the Fourteenth Amendment. "[T]o establish a claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements." Ray v. Rogers, 2014 WL 1235905, *3 (W.D. Pa. 2014) (citing Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)). Plaintiff points to the Third Circuit's decision in Renchenski v. Williams, 622 F.3d 315 (2010), to support his argument that he had a protected liberty interest in not being labeled a sex offender and forced to undergo treatment. In Renchenski, the Court of Appeals held "that the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment." Id. at 328 (citing Vitek v. Jones, 445 U.S. 480, 492 (1980)).

The Court agrees with Plaintiff that this case is not distinguishable from Renchenski in any meaningful way. Just like the inmate in that case, Plaintiff was not convicted of a sex offense, yet he was labelled a sex offender and recommended for treatment, which he refused. Granted, Plaintiff was classified a "low level" offender, whereas the inmate in Renchenski was classified a "moderate/high risk" offender. But this distinction does not render Renchenski inapposite. As the Renchenski Court itself noted, even classifying an inmate "as a possible sex offender . . . is stigmatizing." 622 F.3d at 327. Being called a "low level" sex offender carries with it a no less of a negative connotation. It is also true that DOC policy requires "moderate/high" risk offenders to receive "all seven phases" of the SOP over two years, whereas "low risk" offenders are only required to receive three phases of the program over eight months.

10

See Policy 13.8.1, §§ 11(C)(1)(h)-(i) and 11(C)(1)(2)(f). However, there is no indication that the frequency and duration of treatment for "moderate/high risk" as compared to "low risk" offenders was dispositive in Renchenski. Rather, under the reasoning in Renchenski, any form of "compelled treatment, i.e., sex offender therapy" amounts to a change in "the conditions of [Plaintiff's] sentence and, accordingly constitutes a loss of liberty that exceeds his loss of freedom from confinement." 622 F.3d at 327 (citing Vitek, 445 U.S. at 492).

Defendants' attempts to distinguish Renchenski do not hold water. First of all, contrary to Defendants' contention, it makes no difference that Plaintiff was not placed on any "list" or "identified as a sex offender in any way that inmates would know." As the Court of Appeals explained in Renchenski, "once at the assessment stage" – i.e., once an inmate has been referred for sex offender evaluation – "the stigma of sex offender status has already attached to the inmate." Renchenski, 622 F.3d at 329. In addition, Defendant's argument that inmates would not know of Plaintiff's classification "is belied by the fact that the weekly therapy sessions are group therapy sessions, which comprise as many as fifteen inmates. If [Plaintiff] were forced to participate, his categorization as a sex offender would surely be known to the prison population." Id. at 328 n.9. Defendants' argument that participation in the SOP is not "mandatory" is likewise not persuasive. Once again, the Court of Appeals rejected a similar argument in Renchenski, concluding that the program is not truly voluntary since, among other things, an inmate can be penalized for refusing to participate. Id. at 330 (noting that "prison regulations indicate that Renchenski will face punishments for refusing to participate"). One such "possible consequence[] of failure to participate in treatment" includes "the possibility of being denied parole[,]" which appears to be exactly what took place here. Policy 13.8.1, § 11(B)(4)(c).

Because Plaintiff had a liberty interest in not being labelled a sex offender and being

recommended for mandatory sex offender therapy, "the Fourteenth Amendment entitle[d] him to minimum procedures which will result in 'an effective but informal hearing.'" Renchenski, 622 F.3d at 331 (quoting Morrissey v. Brewer, 408 U.S. 471, 485 (1972)). Such procedures include:

> (1) written notice to [the inmate] that Defendants are considering classifying him as a sex offender and mandating his participation in SOP; (2) a hearing, held sufficiently after the notice to permit [the inmate] to prepare, which includes: disclosure of the evidence Defendants would rely upon for the classification, and an opportunity for [the inmate] to be heard in person and to present documentary evidence; (3) an opportunity to present witness testimony and to confront and cross-examine witnesses called by Defendants, "except upon a finding, not arbitrarily made, of good cause for not permitting such presentation, confrontation, or cross-examination"; (4) administration of the hearing by an independent decisionmaker; (5) rendering of a written statement by the decisionmaker as to the evidence relied on and the reasons for [the inmate's] classification; and (6) "[e]ffective and timely notice of all the foregoing rights."

Id. (quoting Vitek v. Jones, 445 U.S. 480, 494-95 (1984)).

Defendants do not contend that they afforded Plaintiff any of these procedures. Instead, they argue that Plaintiff was given all the process he was due since he could challenge his programming recommendation through the DOC grievance procedures after the alleged deprivation occurred. The Supreme Court has held that a post-deprivation opportunity to be heard might satisfy due process where a pre-deprivation hearing is "unduly burdensome in proportion to the liberty interest at stake" or "where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest." Zinermon v. Burch, 494 U.S. 113, 132 (1990) (citation omitted). However, "where the State feasibly can provide a pre-deprivation hearing, it generally must do so regardless of the adequacy of a post-deprivation [] remedy[.]" Id. Defendants have not argued that providing Plaintiff with the pre-deprivation procedures outlined in Renchenski would have been unduly burdensome or that it could not anticipate the deprivation of Plaintiff's liberty interest. Indeed, Defendants had total control over when the deprivation took place. Thus, the Court cannot conclude that Plaintiff's use of the grievance procedure to

challenge his program recommendation forecloses his claim. See Neal v. Shimoda, 131 F.3d 818, 831 (9th Cir. 1997) ("[T]he fact that [the plaintiff] wrote letters to the SOP administrator protesting the label does not begin to satisfy the requirements" of due process.).

Defendants also argue, however, that Rosage, Rhoads, Wingard, and Joseph lacked the level of personal involvement necessary to impose individual liability on them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs[.]"). This argument is well taken. Rosage's only involvement was forwarding the criminal complaint and affidavit of probable cause to the Psychology Department. Likewise, Rhoads' only involvement was scheduling Plaintiff's sex offender evaluation. Meanwhile, Wingard and Joseph were responsible for handling Plaintiff's grievances, and it is well established that mere involvement in the grievance process "is insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983." Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006). Accordingly, summary judgment should be granted in favor of these Defendants.

For his part, Jozefcyzyk argues that, regardless of whether Plaintiff had a protected liberty interest, he is entitled to qualified immunity. Government officials may "be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The right in question must be been "clearly established at the time of the alleged violation." Torisky v. Schweiker, 446 F.3d 438, 443 (3d Cir. 2006) (citations and quotation marks omitted). Renchenski was decided in 2010 and is on all fours with this case. Thus, the right in question here was clearly established by the time Plaintiff was recommended for treatment in 2015. Cf. Warner v. McVey, 429 F. App'x

176, 178 (3d Cir. 2011) (finding that this right was not clearly established when the plaintiff was deemed a sex offender in 2006). For that reason, Jozefczyk is not entitled to qualified immunity.

In sum, Plaintiff has established that he had a liberty interest in not being labelled a sex offender and recommended for sex offender treatment without a hearing beforehand. The right to a hearing was clearly established as of 2015 when the alleged action took place, so Defendants are not entitled to qualified immunity. However, Rosage, Rhoads, Wingard, and Joseph lacked the level of personal involvement in the alleged constitutional violation necessary to hold them liable. Accordingly, the motion for summary judgment should be denied as to Plaintiff's Fourteenth Amendment claim against Jozefcysyk but granted as to the remaining Defendants.

    4.    <u>Eighth Amendment Claim</u>

Defendants also seek summary judgment as to Plaintiff's Eighth Amendment claim, arguing that the Eighth Amendment does not give an inmate the right to be released prior to the expiration of a valid prison term. Plaintiff has not specifically responded to this argument, so it is unclear whether he is still pursuing this claim. In any event, the claim fails.

The Eighth Amendment "prohibits punishment which violate[s] civilized standards of humanity and decency." <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997). To prove an Eighth Amendment violation, a plaintiff must establish that prison conditions deprived him of life's minimum necessities, that the deprivation was sufficiently serious, and that "a prison official acted with deliberate indifference in subjecting him to that deprivation." <u>Id.</u>

Defendants are correct that, to the extent that Plaintiff's claim is based on his denial of parole, it would fail, both under <u>Heck</u> and because "the mere failure to allow [an inmate] to be released on parole before his maximum sentence expires . . . does not state a valid Eighth Amendment claim." <u>Urruita v. Pa. Atty. Gen.</u>, 2014 WL 6982993, at *5 (M.D. Pa. Dec. 9, 2014)

(citation and quotation marks omitted). To the extent that Plaintiff's Eighth Amendment claim is premised on being labeled a sex offender and the mental anguish and emotional distress that came with it, he would fare no better. See Renchenski, 622 F.3d at 338 ("While we do not doubt being labeled a sex offender caused Renchenski stress and anxiety, dubbing him a sex offender and mandating behavioral modification therapy does not constitute a deprivation of any basic human need."). Therefore, it is recommended that Defendants' motion be granted as to Plaintiff's Eighth Amendment claim.

### 5. Eleventh Amendment Immunity

Finally, the DOC argues that it immune from suit under the Eleventh Amendment. The Eleventh Amendment proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (citations omitted). None of the "three narrowly circumscribed exceptions to Eleventh Amendment immunity" – "(1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law" – is met here. M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 345 (3d Cir. 2003). Thus, the DOC should be dismissed from this action.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment (ECF No. 54) be granted in part and denied in part. To wit, the motion should be granted as to Plaintiff's Eighth Amendment claim and the claims against Rosage, Rhoads, Wingard, Joseph, and the DOC, and denied as to Plaintiff's Fourteenth Amendment claim against Jozefczyk.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rules of Civil Procedure 6(d) and Rule 72(b)(2), and the Local Rules for Magistrates, Plaintiff, because he is a non-electronically registered party, may file objections to this Report and Recommendation within seventeen (17) days after being served with a copy of it and Defendants, because they are electronically registered parties, may file objections within fourteen (14) days after being served with a copy of it. Failure to file timely objections will constitute a waiver of any appellate rights. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
U.S. Magistrate Judge

Dated: December 12, 2016

cc: **THE HONORABLE KIM R. GIBSON**
(electronic notification via CM-ECF)

**MICHAEL BOYCE**
KN6430
SCI-Somerset
1600 Walters Mill Road
Somerset, PA 15510
(via U.S. mail)

**Mary Lynch Friedline**
Office of the Attorney General
(electronic notification via CM-ECF)